```
                IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:               )
                                )
GALEN GENGENBACH,               )
                                )    CASE NO. BK03-44213
            Debtor(s).          )          A04-4030
FARMLAND SERVICE CO-OP, INC.,   )
now known as ALL POINTS         )
COOPERATIVE, INC.,              )
                                )
            Plaintiff,          )    CH. 7
                                )
     vs.                        )
                                )
GALEN GENGENBACH,               )
                                )
            Defendant.          )
```

MEMORANDUM

This matter is before the court on the plaintiff's complaint. The parties have consented to submit the matter to the court without trial (Fil. #43). James Nisley represents the debtor, and Susan Williams represents the plaintiff. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(J).

The plaintiff filed this adversary proceeding to object to the debtor's discharge under 11 U.S.C. §§ 727(a)(2), (a)(4), and (a)(5). The plaintiff is an unsecured creditor, holding a default judgment in a collection action against the debtor in the amount of $10,445.16 plus 16 percent interest. The judgment was entered approximately a month before the debtor filed his Chapter 7 petition. At his § 341 meeting, the debtor testified about pre-petition transfers of funds totaling more than $85,000 which were not disclosed on his statement of financial affairs. The plaintiff alleges that such actions establish that the debtor transferred, removed, or concealed property with the intent to hinder, delay, or defraud creditors; that he knowingly and fraudulently made a false oath or account; and that he has failed to satisfactorily explain the loss or deficiency of assets to meet his liabilities.

Until the spring of 2002, the Farmers State Bank of Eustis had liens on all of the debtor's real estate, machinery and equipment, and livestock. At that time, the bank called the loans, so the debtor sold much of the collateral to his sons for an amount agreed to by the bank and turned the proceeds over to the bank, which then released its liens. His son Kevin purchased the cows, borrowing

almost $76,000 from the Cozad State Bank to do so. No bill of sale was executed. The cattle carried the debtor's brand, which he did not release until the fall of 2004 when Kevin transferred the cattle to his brother Derrick. Between spring 2002 and fall 2004, as Kevin sold the cattle, the buyers issued the checks in the debtor's name because the cattle brand was registered to the debtor. The debtor promptly endorsed the checks to Kevin, who deposited them at Cozad State Bank to pay down his loans. More than $85,000 of cattle proceeds changed hands in this manner in the 18 months prior to the debtor's bankruptcy filing in December 2003, and another $32,000 in the 13 months following the petition date. None of the transfers were reported in the statement of financial affairs. Kevin's loan officer testified that he was not concerned about the lack of a bill of sale or brand transfer from the debtor to Kevin because the bank was well-secured by Kevin's collateral.

The plaintiff maintains that each of the transfers of the cattle checks that occurred within one year pre-petition, and those occurring post-petition, should have been disclosed. The plaintiff also takes the position that the cattle continued to belong to the debtor, because no valid sale or transfer to Kevin took place, so the cattle proceeds properly belonged to the debtor and he intentionally diverted those proceeds from his creditors to Kevin or Kevin's creditors. Having reviewed the evidence submitted by the parties, in particular the depositions of the debtor, Kevin Gengenbach, the debtor's loan officer at Farmers State Bank, and Kevin's loan officer at Cozad State Bank; Kevin's affidavit; and the fact stipulation submitted by the parties, I conclude that judgment should be entered in favor of the debtor.

Denial of discharge is "a serious matter not to be taken lightly by a court." McDonough v. Erdman (In re Erdman), 96 B.R. 978, 984 (Bankr. D.N.D. 1988). The provisions of § 727 are strictly construed in the debtor's favor, while remaining cognizant that § 727 exists to prevent a debtor's abuse of the Bankruptcy Code. Fox v. Schmit (In re Schmit), 71 B.R. 587, 589-90 (Bankr. D. Minn. 1987). The objecting party must prove each element by a preponderance of the evidence. Korte v. Internal Revenue Serv. (In re Korte), 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001).

Section 727(a)(2) of the Bankruptcy Code denies a debtor a discharge if he or she, with intent to hinder, delay, or defraud a creditor, transferred, removed, destroyed, mutilated, or concealed property of the debtor or property of the estate.

To succeed on a § 727(a)(2) claim, the creditor must establish by a preponderance of the evidence that the debtor committed the act complained of, resulting in transfer, removal, destruction or concealment of property belonging to the debtor or the estate,

within the statutory time period, with the intent to hinder, delay or defraud a creditor or officer of the estate. Kaler v. Craig (In re Craig), 195 B.R. 443, 449 (Bankr. D.N.D. 1996).

Asset concealment is often found to exist "where the interest of the debtor in property is not apparent but where actual or beneficial enjoyment of that property continued." Id. Concealment is also a continuing event, and concealment that began outside the requisite time period is within the reach of § 727(a)(2) if it continues into the statutory time period with the necessary intent. Id.

Courts consider several factors in determining whether a debtor acted with actual intent to hinder, delay or defraud: (1) lack or inadequacy of consideration; (2) family, friendship or other close relationship between the transferor and transferee; (3) retention of possession, benefit or use of the property in question; (4) financial condition of the transferor prior to and after the transaction; (5) conveyance of all of the debtor's property; (6) secrecy of the conveyance; (7) existence of trust or trust relationship; (8) existence or cumulative effect of pattern or series of transactions or course of conduct after the pendency or threat of suit; (9) instrument effecting the transfer suspiciously states it is bona fide; (10) debtor makes voluntary gift to family member; and (11) general chronology of events and transactions under inquiry. MWI Veterinary Supply Co. v. Rodgers (In re Rodgers), 315 B.R. 522, 531 (Bankr. D.N.D. 2004) (citing Riley v. Riley (In re Riley), 305 B.R. 873, 878-79 (Bankr. W.D. Mo. 2004)). While any one of these factors can be a sufficient basis on which to find the requisite intent, the presence of more than one strongly indicates that the debtor did in fact possess the requisite intent. Rouse v. Stanke (In re Stanke), 234 B.R. 449, 457 (Bankr. W.D. Mo. 1999).

Here, the plaintiff sets forth circumstantial evidence from which it expects the court to conclude that the debtor committed fraud. However, I do not reach that conclusion based on the facts before me. I find credible the testimony that the debtor transferred his cows to his son in exchange for the son paying the lender's appraised price for the animals. This transaction occurred with the full knowledge and consent of the debtor's lender and the son's lender. In exchange for the receipt of a cashier's check from Kevin's account to purchase the cows, the debtor's bank released its lien on them. Kevin's lender held a blanket lien on his assets, so it considered itself protected when he added the cows to his collateral. The debtor testified that he helped Kevin care for the animals whenever he could, but there is no evidence that he paid for their feed or supplies, or that he continued to have primary responsibility for the cows or treated them as "his."

There is no evidence that the transaction caused any financial gain for the debtor. The cows were fully encumbered by the debtor's bank in Eustis. The bank wanted its money, so the cattle had to be sold, whether privately or at auction. Kevin paid the bank what it asked; there is no evidence the debtor had any equity in the cows or that he personally received any money as part of the transaction. There is no evidence that the debtor received any financial benefit from this transaction, nor is there any evidence that he retained possession or use of the cows. The proceeds received when the cattle were sold to third parties were immediately turned over to Kevin; the debtor did not keep any portion of them.

Although the lack of any documentation memorializing the sale from the debtor to Kevin, or specifically evidencing the Cozad bank's interest in the cattle after Kevin purchased them, may raise suspicions, it is insufficient to support a finding that the debtor transferred the cattle in an intentional attempt to hinder, delay, or defraud a creditor, or that he benefitted from the transfer.

Section 727(a)(4) of the Bankruptcy Code denies a debtor a discharge if, in or in connection with the case, he or she knowingly and fraudulently made a false oath or account; presented or used a false claim; withheld any recorded information regarding his or her property or financial affairs; or gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act.

A debtor's signatures, under penalty of perjury, on a bankruptcy petition, schedules of assets and liabilities, and the statement of financial affairs are written declarations which have the force and effect of oaths. Jordan v. Bren (In re Bren), 303 B.R. 610, 613-14 (B.A.P. 8th Cir. 2004), aff'd in part, rev'd in part, 122 Fed. Appx. 285 (8th Cir. 2005).

Debtors are required to provide complete, accurate, and reliable information at the commencement of the case so that all parties may adequately evaluate the case and the estate's property may be appropriately administered. Bren, 303 B.R. at 614. Courts often will tolerate a single omission or error resulting from innocent mistake. However, multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive. Id. (citations omitted).

The creditor must show that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement to be false; (4) the debtor made the statement with

-4-

fraudulent intent; and (5) the statement was material to the bankruptcy case. Taylor v. Montgomery (In re Montgomery), 309 B.R. 563, 567 (Bankr. W.D. Mo. 2004) (citing Sholdra v. Chilmark Fin'l L.L.P. (In re Sholdra), 249 F.3d 380, 382 (5th Cir. 2001)). In determining whether a debtor has made a statement with fraudulent intent, courts have stated that the "information must have been omitted or altered with the specific purpose of working a fraud." Land O'Lakes Farmland Feed LLC v. Gehl (In re Gehl), 325 B.R. 269, 276-77 (Bankr. N.D. Iowa 2005) (quoting In re Seablom, 45 B.R. 445, 449 (Bankr. D.N.D. 1984)).

The focus of the plaintiff's allegation under § 727(a)(4) appears to be the debtor's answer to question number 10 on the statement of financial affairs (Fil. #1), where he was directed to list all other property, other than property transferred in the ordinary course of his business or financial affairs, transferred either absolutely or as security within one year immediately preceding the commencement of the case. The debtor answered "none" to this inquiry when he completed the form in December 2003.

There is no evidence that the debtor considered that to be a false statement or that he made it with fraudulent intent. By all indications on the record currently before the court, the debtor believed he had sold his cattle to Kevin in April 2002 and he therefore considered all of the proceeds checks to belong to Kevin, so he did not believe that his endorsement of those checks constituted a transfer of his property to Kevin.

Section 727(a)(5) of the Bankruptcy Code denies a debtor a discharge if he or she has failed to explain satisfactorily any loss of assets or deficiency of assets to meet his or her liabilities. Section 727(a)(5) does not contain an intent element as part of its proof. First State Bank of Newport v. Beshears (In re Beshears), 196 B.R. 468, 473 (Bankr. E.D. Ark. 1996).

Under section 727(a)(5), when the plaintiff demonstrates a loss of assets, the burden of proof shifts to the debtor to explain the loss. United States v. Hartman (In re Hartman), 181 B.R. 410, 413 (Bankr. W.D. Mo. 1995). If the debtor's explanation is too vague, indefinite, or unsatisfactory, then the debtor is not entitled to a discharge. Id. Moreover, the debtor must "explain his losses or deficiencies in such a manner as to convince the court of good faith and businesslike conduct." Miami Nat'l Bank v. Hacker (In re Hacker), 90 B.R. 994, 996 (Bankr. W.D. Mo. 1987) (quoting 1A Collier on Bankruptcy ¶ 14.59 at 1436 (14th ed. 1976)). The explanation should be sufficient so the court does not have to speculate as to what happened to the assets or speculate as to the veracity of the explanation. Beshears, 196 B.R. at 473 (citing Bay State Milling Co. v. Martin (In re Martin), 145 B.R. 933 (Bankr.

N.D. Ill. 1992), <u>appeal dismissed</u>, 151 B.R. 154 (N.D. Ill. 1993)).

Unlike the sections of § 727(a) addressed above, denial of discharge under § 727(a)(5) does not require evidence of intent; it merely requires proof of loss of assets with no reasonable explanation.

The plaintiff here argues that "numerous assets" would have been available for creditors if the debtor had not fraudulently transferred them to his son. However, the facts do not support this assertion. As noted above, the cattle were fully encumbered to Farmers State Bank of Eustis. Had they been sold in an arm's-length transaction to a third party for the appraised value, the purchase price would have gone in full to the bank. The buyer would have been entitled to all of the proceeds when he sold the cattle. There are no funds that would have come to the debtor or that could have been used for the benefit of his creditors. That result is no different than what actually occurred. Kevin paid Farmers State Bank for the cattle, and he (and his lender) received all of the proceeds when he sold the cattle. For legal reasons concerning Nebraska brand laws, and because neither the sale to Kevin nor the existence of a new secured party was made of record, the checks were payable only to the debtor. However, he did not keep, conceal, or use the money; he promptly turned it over to the party he considered to be the real owner of the cattle – Kevin.

I am not persuaded that the debtor transferred, removed or concealed assets with the intent to hinder, delay, or defraud creditors, or that he knowingly and fraudulently made a false oath or account, or that he has failed to satisfactorily explain a loss or deficiency of assets. For that reason, separate judgment will be entered in favor of the debtor.

    DATED:    September 13, 2005

                                        BY THE COURT:

                                        /s/ Timothy J. Mahoney
                                        Chief Judge

Notice given by the Court to:
    James Nisley
    *Susan Williams
    U.S. Trustee

Movant (*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.